## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 10 2006

MATTHEW J. DYKMAN
CLERK

IN RE: MOTION FOR PROTECTIVE ORDER
FOR SUBPOENA ISSUED TO THE
STEIN LAW FIRM, in connection with

No. MC 05-0033 JB

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

JAMES P. LEWIS, individually and doing
business as FINANCIAL ADVISORY
CONSULTANTS, INCOME FUND, LTD.
AND GROWTH FUND, LTD.,

        Defendants.

No. CV 03-9354 JSL (VBK)
United States District Court
for the Central District of
California

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Motion to Compel Production of

Documents Against the Stein Law Firm and Request for Order to Show Cause Why the Stein Law

Firm Should not be Held in Contempt; Memorandum of Points and Authorities and Declaration of

Gary Owen Caris in Support Thereof, filed November 23, 2005 (Doc. 15); and (ii) the Request for

Judicial Notice in Support of Motion to Compel Production of Documents Against the Stein Law

Firm and Request for Order to Show Cause Why the Stein Law Firm Should not be Held in

Contempt, filed November 23, 2005 (Doc. 14). The Court held a hearing on the motion on January

23, 2006. The primary issues are: (i) whether the Court should order the production of documents

that the Stein Law Firm contends are protected from disclosure by the attorney-client privilege; and

(ii) whether the Court should hold the Stein Law Firm in contempt for failure to comply with prior

court rulings. Because the Court has already ruled that the attorney-client privilege does not cover the identity of the Stein Law Firm's client and information regarding payment, the Court will grant the motion to disclose most of the requested documents, subject to certain redactions outlined in Exhibits A and B to this Memorandum Opinion and Order, which are being filed ex parte to allow only Mr. Stein's review, but will deny the request to show cause. The Stein Law Firm must produce these documents within five days of the entry of this Memorandum Opinion and Order. The Court will also grant the Receiver's Request for Judicial Notice.

## FACTUAL BACKGROUND

This motion arises from a civil enforcement action that the United States Securities and Exchange Commission filed against James P. Lewis, Jr. in the United States District Court for the Central District of California, Securities and Exchange Commission v. Lewis et al., Case No. CV 03-9354 JSL (VBK). In that action, the SEC alleges that Lewis operated a Ponzi scheme to defraud investors, many of whom were elderly, retired persons, of hundreds of millions of dollars through false promises of favorable financial returns. See generally Complaint, Securities and Exchange Commission v. Lewis et al., Case No. CV 03-9354 JSL (VBK). Lewis was arrested shortly after the SEC action commenced and has been detained throughout the proceeding on various criminal fraud and other charges. See Opposition of Robb Evans as Receiver to Motion For Protective Order re Subpoena to the Stein Law Firm; Memorandum of Points and Authorities and Declaration of Gary Owen Caris in Support Thereof ("Opposition to Protective Motion") at 1, filed June 27, 2005 (Doc. 5).

The federal court in the SEC action appointed Robb Evans as temporary and, subsequently, permanent receiver over the Defendants' assets. See Preliminary Injunction Order and Orders: (1)

Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery;
(4) For Accountings; and (5) Order Appointing a Permanent Receiver ("Permanent Receivership
Order") § VIII, Securities and Exchange Commission v. Lewis et al., Case No. CV 03-9354 JSL
(VBK). The Permanent Receivership Order provided that Evans was appointed Receiver over the
assets of Lewis, Financial Advisory Consultants ("FAC"), Income Fund, Ltd., and Growth Fund,
Ltd., and their subsidiaries and affiliates. with full powers of an equity receiver, including but not
limited to, full power over all funds, assets, collateral, premises, choses in action, books, records,
papers, and other property belonging to or in possession of or control of Lewis, FAC, Income Fund,
and Growth Fund. See id.

The Permanent Receivership Order grants the Receiver broad powers and duties over Lewis'
assets, freezes virtually all of Lewis' assets, and obligates Lewis as well as his attorneys to cooperate
with the Receiver, to turn over documents and assets to the Receiver, and to take no action, directly
or indirectly, that would interfere with the Receiver's exercise of his rights and powers. See id. §§
V. VIII-X. The Permanent Receivership Order also grants the Receiver the power to conduct
discovery under §§ VIII.C. and XVI in furtherance of the Receiver's powers and duties to locate and
take possession, custody, and control of all receivership assets. In carrying out these duties, the
Receiver has analyzed Lewis' records and receivership assets, and has concluded that the SEC action
is meritorious, that Lewis ran a massive Ponzi scheme, that Lewis' purported investments were
fraudulent, and that total injuries in this matter exceeded $169.5 million. See Opposition to
Protective Motion at 2 n.1.

The Permanent Receivership Order also contains comprehensive asset freeze provisions that
preclude Lewis from transferring, disbursing, using, or otherwise exercising virtually any control

-3-

over assets without the Receiver's approval or further court order. See Permanent Receivership Order §§ IV-VI. Lewis was further ordered to provide a detailed written accounting of all assets valued in excess of $5,000.00. See id. § VII.

After the court in the SEC action issued the Permanent Receivership Order, Lewis retained Scott M. Schlegel and James J. Warner to represent him. See Opposition to Protective Motion at 3. The Receiver thereafter made repeated demands for disclosure of the source, timing, and amount of compensation that Mr. Schlegel and Mr. Warner received. See id.

When the attorneys refused to divulge the source of their compensation, the court in the SEC action ordered the attorneys to comply with the Receiver's request. See id. Mr. Schlegel and Mr. Warner requested continuances of the motion hearing, but ultimately filed no opposition to the motion to compel such disclosures and at no time offered any authority to support the proposition that the nature, amount, timing, and source of payment of their fees was privileged under the attorney-client privilege or protected from disclosure to the Receiver on any other legal basis. See id. Pursuant to the Court's order, Mr. Schlegel and Mr. Warner sent letters to the Receiver identifying payments that the Stein Law Firm made to them as compensation for their services in representing Lewis. See Letter from Scott Schlegel to Gary Owen Caris (dated April 18, 2005); Letter from James J. Warner to Gary Owen Caris (dated April 19, 2005).

Also, in January 2005, a full year after the receivership commenced, the Receiver first learned from Mr. Warner that Mr. Warner had taken possession of a valuable Mercedes Benz vehicle as to which Mr. Lewis was the registered owner. See Opposition to Protective Motion at 3. Mr. Warner refused to turn over the vehicle to the Receiver until after the Receiver filed an application for an order to show cause as to why the court should not hold him and the person who delivered the

-4-

vehicle to him – Blakney Boggs – in contempt. See id. The court in the SEC action subsequently

held Mr. Warner in contempt of court for his conduct in retaining Mr. Lewis' vehicle in partial

compensation for services rendered without the Court's or the Receiver's knowledge. See id. The

court ordered him to pay $13,257.80 in attorney's fees and costs, and $3,000.00 for depreciation in

the vehicle's value during the period he had possession of the car. See id.

## PROCEDURAL BACKGROUND

In furtherance of the Receiver's investigation and pursuit of receivership assets pertaining

to Lewis' post-receivership engagement of counsel, the Receiver has subpoenaed records of the Stein

Law Firm to determine the source and related information pertaining to the $165,000.00 in post-

receivership payments that the Stein Law Firm made to Lewis' criminal and civil defense counsel.

See id. at 3-4. Specifically, the Receiver wants to know if the transferred funds are property of the

receivership estate. The subpoena requests the following documents:

> 1. All Documents, including but not limited to wire transfers, checks and/or cashier's
> checks (front and back) evidencing or reflecting fees provided by the Company to
> Scott Schlegel and/or The Law Offices of Scott M. Schlegel identified in the letter
> dated April 18, 2005, a copy of which is attached hereto as Exhibit 1, including
> attorneys fees and fees identified "For John P. Semmons CPA, Forensic Accountant."
>
> 2. All Documents, including but not limited to checks and/or cashier's checks (front
> and back) evidencing or reflecting payments made by the Company to James J.
> Warner and/or The Law Offices of James J. Warner identified in the letter dated
> April 19, 2005, a copy of which is attached hereto as Exhibit 2.
>
> 3. All Documents evidencing, reflecting and/or describing the source of the funds
> for the provision of fees by the Company to Scott Schlegel and/or The Law Offices
> of Scott M. Schlegel as identified in the letter dated April 18, 2005, a copy of which
> is attached hereto as Exhibit 1, including attorneys fees and fees identified "For John
> P. Semmons CPA, Forensic Accountant."
>
> 4. All Documents evidencing, reflecting and/or describing the source of the funds
> comprising the payments by the Company to James J. Warner and/or The Law

Offices of James J. Warner as identified in the letter dated April 19, 2005, a copy of which is attached hereto as Exhibit 2.

Exhibit 1 to Subpoena for Production of Documents at 3.

The Stein Law Firm did not produce any documents in response to the subpoena. See Declaration of Gary Owen Caris ¶14, at 4 (executed on June 24, 2005)(hereinafter "Caris Decl."). Specifically, the Stein Law Firm did not produce copies of any of the documents reflecting the transfers of payments to Mr. Schlegel and to Mr. Warner, which have already been identified and disclosed pursuant to the court order in the SEC action. See id.

A series of written communications from the Stein Law Firm preceded its filing of the Motion for Protective Order. See id. ¶ 15, at 4-5. At no time, either in those communications or in the version of the Motion for Protective Order served on the Receiver, did the Stein Law Firm identify its client. See id. If the Stein Law Firm's client is Lewis, the Permanent Receivership Order imposes duties of cooperation on Lewis' counsel. See Permanent Receivership Order § IV (providing injunction applicable to attorneys regarding Lewis' assets); id. § VI (providing injunction against attorneys' destruction of records pertaining to Lewis); id. § IX (imposing duty on attorneys in custody or possession of Lewis' "assets, collateral, books, records, papers or property" to give the Receiver access and control).

In response to the Receiver's subpoena, the Stein Law Firm filed on June 13, 2005, a motion for protective order containing no substantive information. The service copy of the motion contained no factual basis for withholding documents, and the Stein Law Firm provided no privilege log. See Motion for Protective Order and/or Alternative Motion to Quash ("Motion for Protective Order") at 1-2, filed June 13, 2005 (Doc. 1). The Receiver was therefore left without any information as to

why the requested documents in the Stein Law Firm's possession were protected from disclosure under the attorney-client privilege. Additionally, the motion that the Stein Law Firm served on the Receiver cited only one case, in passing, to support its contention that the attorney-client privilege protected the documents that the Receiver sought. See id. at 2. Instead, the Stein Law Firm thought it was appropriate to file its points and authorities under seal, leaving the Receiver unaware of the general identity of the documents being withheld from disclosure and the legal basis upon which non-disclosure was asserted.

The Court heard the Stein Law Firm's motion for protective order on October 13, 2005. The Court stated that the identity of Mr. Stein's client was not privileged and that certain billing information was also not privileged, but recognized that there might be privileged materials intertwined in some of those unprivileged materials. See Transcript of Hearing at 3:4-10 (taken October 13, 2005).[1] After calling the case and getting entries of appearance, the Court gave its preliminary views before argument based upon its review of the record and of the briefing:

> Let me give you some thoughts here, then I'll hear whatever y'all want to say on this.
> . . . I don't think that the identity of Mr. Stein's client's going to be privileged[,] and
> I don't think certain billing information's going to be privileged, so I think that is
> going to probably have to be produced. I think time records[,] those sort of things
> are not going to be privileged, but I also recognize that intertwined in some of that
> information may be some communications or some things that are privileged. So
> what I would be inclined to do is, deny the motion[,] but require [S]tein [L]aw [F]irm
> to produce a privilege log[. D]ocuments that it wants [sic] to go ahead and
> produce[,] basically[,] under my ruling[,] as to what's privileged and not privileged[,]
> they can go ahead and produce. If it doesn't want to produce documents[,] it can
> [produce] privilege logs, let the [R]eceiver look at that privilege log, request
> documents off of it. If Mr. Stein doesn't want to produce those, then perhaps that's
> the time to look at things in [an] in camera proceeding.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

> But at this stage, basically, deny the motion, require [a] privilege log to be produced[,] and take a look at it and see what you want. If Mr. Stein wants to produce it, he can. If he doesn't want to produce it[,] then I can take a look at it in camera and decide whether it should be produced as privileged. That's what I'm inclined to do. But, Mr. Stein, it's your motion[.] if you wish to speak in support of it.

Id. at 2:20-21, 3:4-4:2. The Clerk's Minutes states:

> Court: . . . Does not think identity of Mr. Stein's client is privileged and does not think certain billing information is privileged, so that will have to be produced. But, recognize intertwined in some of those materials there are some privileged materials. Inclined to deny motion and order privilege log prepared to determine from there if in camera review is necessary.

Clerk's Minutes at 1, filed October 18, 2005 (Doc. 12).

Mr. Stein offered to state in an affidavit that James P. Lewis was not his client, but that did not satisfy the Receiver, who insisted on receiving documents to determine where the moneys are. See Transcript of Hearing at 4:3-16 (taken October 13, 2005). Mr. Stein offered no further arguments and asked for twenty days to prepare the privilege log, a request to which the Receiver did not object. See id. at 4:19-24. The Court ordered Stein to prepare a privilege log within twenty days from the date of the hearing, see id. at 4:25, and stated that, if a dispute remained between the parties, to come back to Court to determine if an in camera review of documents withheld from production was necessary:

> THE COURT: What I'd like for y'all to do[,] once you get the privilege log[,] you take a look at it[,] tell Mr. Stein what you want to see off of it. I've sort of told you what my inclination is to give you some guidance[,] and then if there's still disputes about that, then y'all can bring it back to me.
>
> MS. POE: Okay.
>
> THE COURT: But I don't think I need to go any further than this[,] with the hope that perhaps you won't need any more rulings]. B]ut if you do, then I'm available.

-8-

> MS. POE:  Thank you[,] Your Honor.
>
> MR. STEIN:  Thank you[,] Your Honor.
>
> THE COURT:  Maybe you can take a look at the privilege log first and see.  There may be a lot of stuff in there you don't want to see.
>
> MS. POE:  That's true.
>
> THE COURT: I'm [kind of] guessing[.  W]hat I know about this[,] there may not be that many documents[,] but there may be.  And I may have to[,] you know[,] sort through and figure out the intertwine[ment] issue to protect any privileged communications[,] but let's start with that.  I will try to get you [an] order out, but let's run it 20 days from today.
>
> MR. STEIN:  Okay.
>
> THE COURT:  And I'll try to get you an opinion out [t]alking a little bit about these[,] the identity issues[,] since that is something that y'all raised[,] and I'll try to get you [] something in writing.

Id. at 5:4-6:5.  The Court thus stated that it would deny the motion for protective order except that it would require the Stein Law Firm to submit a privilege log.  See id. at 3:4-4:2.  As the Clerk's Minutes states:

> Court: Look at log.  If see something want that is on it talk to Mr. Stein.  If disputes remain can come back to Court.  Guessing not [sic] that there are not many documents, but may be.

Clerk's Minutes at 1.  The Court announced that a written order would follow the hearing, see Transcript of Hearing at 6:2-5 (taken October 13, 2005), but did not enter the formal order until January 24, 2006 – after the Receiver filed his motion to compel and after the Stein Law Firm responded to that motion.

On or about November 1, 2005, the Stein Law Firm served a privilege log pursuant to the Court's instruction.  See Motion to Compel Production of Documents Against the Stein Law Firm

and Request for Order to Show Cause Why the Stein Law Firm Should not be Held in Contempt;

Memorandum of Points and Authorities and Declaration of Gary Owen Caris in Support Thereof

("Motion to Compel") at 3; Response to November 23, 2005 Motion to Compel ("Response") at 1,

filed December 6, 2005 (Doc. 16). At that time, the Stein Law Firm produced no documents. See

Declaration of Gary Owen Caris ¶ 3, at 1 (executed November 23, 2005)(hereinafter "November 23

Caris Decl."). The privilege log that the Stein Law Firm produced listed fourteen categories of

documents in summary fashion without the detail that rule 45(d)(2) requires. See Privilege Log of

the Stein Law Firm Concerning Client Protection as Outlined in Motion for Protective Order Motion

to Quash Subpoena ("Privilege Log") at 1, filed November 2, 2005 (Doc. 13). The fourteen

categories of documents were all withheld "as protected from [sic] the Attorney-Client [privilege]."

Id. For the first time, the Stein Law Firm asserted one as privileged "under [the] IRS Code – further

briefing can be provided on this point." Id. at 2.

On November 8, 2005, Mr. Gary Owen Caris and Mr. Stuart Stein met and conferred

telephonically in an effort to resolve the discovery dispute. See November 23 Caris Decl. ¶ 4, at 1.

Mr. Stein gave way on a few of the items, which he delivered to Mr. Caris at his office. See

Response at 1.

Mr. Stein communicated that he had no intention of producing any documents that would

disclose the identity of his client. See November 23 Caris Decl. ¶ 4, at 2. Mr. Caris repeatedly asked

Mr. Stein why his law firm would not produce such documents, despite the Court's ruling and

despite the legal authorities that the Receiver had submitted in opposition to the Stein Law Firm's

motion for protective order. See id. Mr. Stein repeated that he believed disclosure of his client's

identity would constitute a breach of the attorney-client privilege, did not believe that the Court had

already determined that his client's identity was not privileged, and, while there were more legal

bases for his position, he would not share the legal reasons with Caris, believing that the United

States Court of Appeals for the Tenth Circuit allowed him to withhold those legal reasons from

opposing counsel. See id.

Although Mr. Caris threatened to file a motion for an order to show cause as to why the Court

should not hold Mr. Stein in contempt, Mr. Stein thought he would await the Court's order. See

Response at 1-2. As a result of the telephonic conference, Mr. Stein agreed to produce the

documents reflected in items 3, 6, 7, and 9 of the privilege log, but refused to produce any other

documents. See November 23 Caris Decl. ¶ 5, at 2. Those documents do not disclose the identity

of the Stein Law Firm's client. As to all of the remaining documents which Mr. Stein continues to

refuse to produce, he indicated, according to Mr. Caris, that he was withholding the documents

because of the "ramifications of disclosure of the client's name." Motion to Compel at 4. Mr. Stein

did not explain what he meant by that statement. See id. Additionally, while from time to time he

asserted that more legal bases existed to withhold the documents, he consistently refused to advise

Mr. Caris of the legal arguments, stating that such bases were in the papers previously filed under

seal. See id. The Receiver's Motion to Compel is the second arising out of the Receiver's

subpoena of records to the Stein Law firm to determine the source and related information pertaining

to $165,000.00 in post-receivership payments made by the Stein Law Firm to Lewis' criminal and

civil defense counsel. The Receiver moves the Court to: (i) compel production of Docs. 1-2, 4-5,

8, 10, 13-14 listed in the Privilege Log; (ii) conduct an in camera review of Docs. 11-12 to

determine if the attorney-client privilege protects these items; and (iii) order the Stein Law Firm to

show cause why the Court should not hold it in contempt because of its failure to properly respond

to the Receiver's subpoena for records. See Motion to Compel at 4-10. The Stein Law Firm states

that. without the client's permission. he cannot produce any material the firm feels is privileged

without a valid court order and without the in camera viewing that the Court contemplated and that,

according to Stein, the case law supports. See Response at 2 (citing In re Foster, 188 F.3d 1259,

(10th Cir. 1999)). The Stein Law Firm also contends that this motion is premature because the Court

has not yet ruled on the pending Motion for Protective Order and because the Court has not set a

procedure to view the materials in camera. See id. at 2. He asks the Court to deny the motion

without prejudice. See id.    In his request for judicial notice, the Receiver asks that the Court take

judicial notice. under rule 201 of the Federal Rules of Evidence, of two documents: (i) the

Opposition to Protective Motion; and (ii) the Clerk's Minutes of the hearing held October 13, 2005

before the Honorable James O. Browning. See Request for Judicial Notice in Support of Motion to

Compel Production of Documents Against the Stein Law Firm and Request for Order to Show Cause

Why the Stein Law Firm Should Not Be Held in Contempt ("Request for Judicial Notice") at 1-2,

filed November 23, 2005 (Doc. 14).

## LAW REGARDING ATTORNEY-CLIENT PRIVILEGE

### I.    BURDEN OF PROOF ON ASSERTION OF PRIVILEGE.

Rule 45(d)(2) of the Federal Rules of Civil Procedure requires an objection to a subpoena

based on privilege to be supported by documents and information to allow the party issuing the

subpoena to contest the objection:

> When information subject to a subpoena is withheld on a claim that it is privileged
> or subject to protection as trial preparation materials, the claim shall be made
> expressly and shall be supported by a description of the nature of the documents.
> communications, or things not produced that is sufficient to enable the demanding
> party to contest the claim.

The effect of this requirement is that the party resisting production must submit a privilege log to support the objection.   See In re Grand Jury Subpoena, 274 F.3d 563, 575-76 (1st Cir. 2001)("[A]lthough [rule 45(d)(2)] does not spell out the sufficiency requirement in detail, courts [consistently] have held that the rule requires a party resisting disclosure to produce a document index or privilege log. A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." (citations omitted)); Tuite v. Henry, 98 F.3d 1411, 1416 (D.C. Cir. 1996)(describing privilege logs as "requisite" upon assertion of privilege).

The party asserting the attorney-client privilege bears the burden of demonstrating the privilege applies to the communications at issue. See In re Grand Jury Subpoenas, 144 F.3d 653, 658 (10th Cir. 1998)(citing Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995)); United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)(citing Ralls v. United States, 52 F.3d 223, 225 (9th Cir. 1995)). In In re Foster, 188 F.3d at 1259, the Tenth Circuit stated: "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed. The party must bear the burden as to specific questions or documents, not by making a blanket claim." Id. at 1264 (citing FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1276 n.6 (10th Cir. 1998), and In re Grand Jury Subpoenas, 144 F.3d at 658).

> A general objection is insufficient. The purpose of [rule 45] is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and resist it. . . . A person who fails to provide adequate information about the privilege to the party seeking the information may be held in contempt or be subjected to sanctions. Moreover, failure to assert a privilege properly may amount to a waiver of that privilege.

Mass. School of Law at Andover, Inc. v. American Bar Ass'n., 914 F. Supp. 1172, 1178 (E.D. Pa. 1996)(citing Fed. R. Civ. P. 45 advisory committee's note (1991), 45 U.S.C. §§ 404-405, and Eureka

Fin. Corp. v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 183-84 (E.D.Cal. 1991)).

## II.    IDENTITY OF CLIENT.

In In re Grand Jury Subpoenas, 906 F.2d 1485 (10th Cir. 1990), the Tenth Circuit confirmed

that the attorney-client privilege generally does not protect the client's identity, the payment's source,

amount, and nature, or the documents pertaining to the client's fee arrangements with counsel, from

disclosure: "It is well recognized in every circuit, including our own, that the identity of an attorney's

client and the source of payment for legal fees are not normally protected by the attorney-client

privilege." Id. at 1488 (citations omitted). See Clarke v. American Commerce Nat'l Bank, 974 F.2d

127, 129 (9th Cir.)("Our decisions have recognized that the identity of the client, the amount of the

fee, the identification of payment by case file name, and the general purpose of the work performed

are usually not protected from disclosure by the attorney-client privilege." (citations omitted)), reh'g

denied, 977 F.2d 1533 (9th Cir. 1992). The Tenth Circuit, in In re Grand Jury Subpoenas, held that

the attorney-client privilege does not protect documents relating to the payment or acceptance of

fees, including checks, cashier's checks, deposit slips, receipts, wire transfers, and IRS form 8300s.

See 906 F.2d at 1492. As the Tenth Circuit explained,

> Information regarding the fee arrangement is not normally part of the professional
> consultation and therefore it is not privileged even if it would incriminate the client
> in wrongdoing. In other words, while payment of a fee to an attorney is necessary to
> obtain legal advice, disclosure of the fee arrangement does not inhibit the normal
> communications necessary for the attorney to act effectively in representing the
> client.

Id. (citations omitted).  The Tenth Circuit held that "fee arrangements are not protected by the

attorney-client privilege." Id.

The United States Court of Appeals for the Ninth Circuit reached a similar conclusion in

ruling that the attorney-client privilege does not protect information regarding the fees paid to counsel. In Tornay v. United States, 840 F.2d 1424 (9th Cir. 1988), the Ninth Circuit stated:

> The Tornays' identity was known to the IRS. The agency sought only the amount, date and form of the payments to Wayne, not information regarding a fee arrangement as in [In re Grand Jury Proceedings, 600 F.2d 215 (9th Cir. 1979), and United States v. Hodge and Zweig, 548 F.2d 1347 (9th Cir. 1977)]. The Tornays have not demonstrated the existence of exceptional circumstances that would make disclosure tantamount to revealing a confidential communication.

Id. at 1428. The Ninth Circuit also addressed at length the policy reasons that support its ruling that fee information is not subject to the attorney-client privilege and protected from disclosure:

> We apply the attorney-client privilege only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client. We are not persuaded that its purpose will be furthered by extending the privilege to information regarding fees paid by a client. . . . Some prospective clients, arguably, may decide not to retain counsel for legal services if they could be implicated by expenditures for those services. This is not, however, a sufficient justification to invoke the privilege. The privilege is not to immunize a client from liability stemming from expenditures for legal services.

Id. at 1428-29 (citing United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977)).

More recently, the Ninth Circuit reiterated that information regarding the timing, amount, and source of payment of fees to counsel is not privileged under the attorney-client privilege even though the information may implicate the client in criminal or other liability. In In re Grand Jury Proceedings, 33 F.3d 1060 (9th Cir. 1994)(per curiam), the Ninth Circuit affirmed a judgment of contempt against an attorney and stated:

> Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client. Here, the grand jury seeks to know only the amount of money [the attorney] received, the dates he received payment, from whom the money was received. . . . Here, [the attorney] argues that [the client] initially sought legal advice from [the attorney] regarding [the client's] Nevada and Florida indictments. [The attorney] asserts that he later undertook representation of

[the client] in the present grand jury investigation regarding a possible conspiracy to defraud the United States and to impede the administration of internal revenue laws under [United States v. Klein, 247 F.2d 908 (2d Cir. 1957)]. [The attorney's] argument is predicated on the assumption that the privilege applies whenever evidence regarding the fees paid to the attorney would implicate the client in a criminal offense for which the client sought the attorney's legal advice. This argument must fail.

Id. at 1063-1064 (citations and internal quotations omitted).

The United States Court of Appeals for the Second Circuit addressed this issue in Vingelli v. United States, 992 F.2d 449 (2d Cir. 1993), in which the client had hired an attorney to transmit funds to another attorney to represent a person facing drug charges. See id. at 451. In Vingelli, the Second Circuit held that the attorney-client privilege did not protect the identity and details regarding the payment of fees even when doing so may suggest wrongdoing on the client's part:

The rule governing the unprivileged nature of client identification implicitly accepts the fact that a client might retain or consult an attorney for numerous reasons. Thus, the fact that disclosure of [the client/fee-payer's] identity might suggest the possibility of wrongdoing on his or her part does not affect [the] analysis of whether disclosure would reveal a confidential communication.

Id. at 453.

Some Circuits have noted three exceptions to this general rule: the "legal advice exception," the "last link exception," and the "confidential communication exception." In re Grand Jury Subpoenas, 906 F.2d at 1488. The legal advice exception provides that client identity and fee information are protected "where there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought." Id. (citations omitted). This exception requires that "the person seeking the legal advice [is] the client of the attorney involved" and "that the client sought legal advice about the very activity for which the fee information is sought." Id. at 1488-89.

-16-

The last link exception protects normally unprivileged information "when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions." Id. at 1489 (citing In re Grand Jury Proceedings, 517 F.2d 666, 674 (5th Cir. 1975))(internal quotations omitted). Refining the test, the United States Court of Appeals for the Fifth Circuit has stated that the exception applies "when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." Id. (citing In re Grand Jury Proceedings, 680 F.2d 1026, 1027 (5th Cir. 1982))(internal quotations omitted).

The confidential communications exception shields a client's identity "where the disclosure of the client's identity would be tantamount to disclosing an otherwise protected confidential communication." Id. at 1491 (citations omitted). To qualify for this exception, "the advice sought must have concerned the case then under investigation and disclosure of the client's identity would now be, in substance, the disclosure of a confidential communication by the client, such as establishing the identity of the client as the perpetrator of the alleged crime at issue." Id. at 1492.

The Tenth Circuit has not decided whether to adopt the legal advice exception or the last link exception. See id. at 1488 ("We need not decide whether [the legal advice exception] will be adopted in this circuit because it does not apply to this case"; "We need not ultimately decide whether [the last link exception] should apply in this circuit. . . ."). The Tenth Circuit has held that fee arrangements are not privileged unless they meet the standard for the confidential communication exception "or the payment of the fee itself is unlawful." See id. at 1492. The Tenth Circuit, however, has recognized that "disclosing the actual fee contracts has the potential for revealing

-17-

confidential information along with unprotected fee information." <u>Id.</u> The district court should determine whether "fee contracts contain any confidential communications that are protected by the attorney-client privilege." <u>Id.</u> (citations omitted). The district court has discretion to decide whether to conduct an in camera review of fee contracts. <u>See id.</u> (citation omitted).

## III.    **PROVISION OF SERVICES.**

When an attorney is retained to perform functions that do not constitute legal services, the communications involved with respect thereto are not privileged. "The attorney-client relationship is not genuine where its only purpose is to gain confidentiality for the client or to use the lawyer as a mere conduit for the payment of money." <u>In re Grand Jury Subpoenas,</u> 803 F.2d 493, 499 (9th Cir. 1986)(citing <u>In re Grand Jury Subpoena Served Upon Doe,</u> 781 F.2d 238, 248 (2d Cir. 1985)(en banc)). "The attorney-client privilege extends only to confidential communications made for the purpose of facilitating the rendition of *legal* services to the client. . . . To the extent [the attorney's] services to the Horvaths took the form of transferring funds and facilitating transactions, they were not privileged." <u>United States v. Horvath,</u> 731 F.2d 557, 561 (8th Cir. 1984)(citations omitted)(emphasis in original). Where the client makes a communication with the intent to further an unlawful or fraudulent act and carries out that crime or fraud, the communication is not privileged. <u>See In re Sealed Case,</u> 107 F.3d 46, 49 (D.C. Cir. 1997)(citations omitted).

## **LAW REGARDING CONTEMPT**

Rule 45(e) provides: "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Fed. R. Civ. P. 45(e). "To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had

knowledge of the order, and that the defendant disobeyed the order." Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1315 (10th Cir. 1998)(citations omitted).

## ANALYSIS

The Stein Law Firm's asserted reasons for nondisclosure of the remaining documents are not supported by the law, are not reasonable, and are in contravention of the Court's prior rulings.[2] No attorney-client privilege applies to protect most, if any, of the requested documents from disclosure to the Receiver.

The Tenth Circuit has made clear that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege. See In re Grand Jury Subpoenas, 906 F.2d at 1488 (citations omitted). The fee arrangement is not normally part of the professional consultation and therefore it is not privileged even if it would incriminate the client in wrongdoing. See id. at 1492 (citations omitted).

Despite the general rule, the Tenth Circuit recognizes that client identity and fee information may be privileged, under the confidential communication exception, when disclosure would be tantamount to disclosing an otherwise protected confidential communication. See id. at 1491 (citations omitted). To activate the confidential communication exception, the advice sought must have concerned the case then under investigation and disclosure of the client's identity would now be, in substance, the disclosure of a confidential communication by the client, such as establishing the identity of the client as the perpetrator of the alleged crime at issue. See id. at 1492. Fee arrangements are also confidential where paying the fee itself is unlawful. See id.

---

[2] The Court need not decide whether the Stein Law Firm and its client are also violating the Permanent Receivership Order by failing to provide the documents that the subpoena seeks.

-19-

Other Circuits have recognized two other exceptions to the general rule. The legal advice exception protects client identity and fee information when there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought. See id. at 1488 (citations omitted). The last link exception shields such information when disclosure will supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment. See id. at 1489 (citation omitted).

In evaluating and applying the narrow exceptions to the attorney-client privilege, the Tenth Circuit has found that the attorney-client privilege does not protect information similar to that sought in the subpoena to the Stein Law Firm and has stated that it should be disclosed. See id. at 1492. Whether the payments for fees were routed to the Stein Law Firm by Lewis or a third party, or were routed from the Stein Law Firm to Messrs. Schlegel and Warner, does not make the information privileged from disclosure under the attorney-client privilege. See id. (citations omitted).

1.    Category No. 1: New Client Information Form.

Mr. Stein indicated that this form contained "basic contact information," including the age and marital status of the client and how the client heard about the firm. See November 23 Caris Decl. ¶ 6, at 2. Mr. Stein stated that, because the New Client Information Form had the client's name on it, it was therefore subject to the attorney-client privilege. See id. That is an insufficient justification to withhold production. See In re Grand Jury Subpoenas, 906 F.2d at 1488 (citations omitted).     The Court does not believe that this document falls under any exception to the general rule. The confidential communication exception does not apply because the New Client Information Form merely identifies the Stein Law Firm's client without disclosing, in substance, any confidential communication between the client and the Firm. The New Client Information Form does not fall

-20-

under the legal advice exception, because turning over the form would implicate the client only in the legal activity of hiring the Stein Law Firm, not in any illegal activity. Nor does it supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment, because it only states that the client hired the Stein Law Firm to be his or her attorney without providing any evidence of wrongdoing. The Stein Law Firm shall produce this form.

2.    **Category No. 2: Notes from Client Concerning Payment of Fees to Mr. Schlegel.**

Mr. Stein acknowledged that the notes had no other information on them other than as described in the privilege log. See November 23 Caris Decl. ¶ 7, at 2. Mr. Stein stated that, even though the client's name was not on the notes, the notes "may lead to the discovery of her name," and Mr. Stein therefore asserted that the attorney-client privilege protected it. Id. Once again, in addition to the fact that mere disclosure of a client's name is not a violation of the attorney-client privilege, see In re Grand Jury Subpoenas, 906 F.2d at 1488 (citations omitted), the Court cannot deem Mr. Stein's role in transferring money to Mr. Warner and Mr. Schlegel from his undisclosed client to constitute the rendering of legal services, see United States v. Horvath, 731 F.2d at 561 (citations omitted). Furthermore, the Court does not believe that this document falls under any of the three exceptions to the general rule. Therefore, any communication surrounding that activity would not be privileged.

Moreover, no exception applies to this document: The confidential communication exception does not apply because the document would inform the Receiver only that the Stein Law Firm's client wanted to use the Firm as a conduit for money to Mr. Schlegel without disclosing anything that is, in substance, a confidential communication. Also, the legal advice exception does not come into play, because there is not a strong probability that disclosure would implicate the Stein Law Firm's

-21-

does not supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment, because it would still have to be proven that the money came from an illegal source before adverse legal action could be taken.  Finally, nothing about the check indicates that the payment of the fee itself is unlawful.  Accordingly, the Stein Law Firm will produce this check.

4.    **Category No. 5: Notes from Client.**

Mr. Stein admitted that these notes discuss only payment of fees to Mr. Schlegel or to Mr. Warner, and did not discuss other matters.  See November 23 Caris Decl. ¶ 9, at 3.  Therefore, for the same reasons that the Stein Law Firm must produce the notes reflected in Category No. 2, the Stein Law Firm must produce these notes.  Mr. Stein's role as a conduit for the payment of fees to Mr. Schlegel and to Mr. Warner to represent Mr. Lewis does not concern the provision of legal services.  See United States v. Horvath. 731 F.2d at 561.

5.    **Category No. 8: Check from Client to the Stein Law Firm.**

Mr. Stein took the same position as he did with the check reflected in Category No. 4 – that the client's name on the check makes the instrument immune from disclosure under the attorney-client privilege.  See November 23 Caris Decl. ¶ 10, at 3.  For the same reasons that the Stein Law Firm must disclose Category No. 4, it must also disclose Category No. 8.

6.    **Category No. 10: Currency Transaction Report.**

Mr. Stein asserted that the currency transaction report was prepared for the Internal Revenue Service because it involved a cash transaction for more than $10,000.00.  See id. ¶ 11, at 3.  Mr. Stein acknowledged to Mr. Caris that it was not subject to the attorney-client privilege, but that it was privileged from disclosure under the Internal Revenue Code.  See id.  Mr. Stein did not assert the specific statutory basis for the privilege or to whom the privilege flowed -- to the Stein Law

Firm's undisclosed client or to the firm itself -- or other details of this alleged privilege.  See id.

In any event, there has been an inadequate showing as to the basis for the privilege under the Internal Revenue Code in that the Court cannot ascertain to whom the privilege attaches. Additionally, the Stein Law Firm's original motion for protective order was based solely upon the attorney-client privilege.  Having failed to assert any other basis when he filed the original motion over five months ago, it is too late for Mr. Stein to assert any other basis for nondisclosure.  Mr. Stein will turn over this document.

### 7.     Category No. 11: Legal Opinion Letter.

Mr. Stein asserted that he wrote this letter, dated May 28. 2004, to a lawyer.  See id. ¶ 12. at 3. He stated that the letter's recipient represents the same client that the Stein Law Firm represents and that it contained an opinion about a point under the Internal Revenue Code.  See id.  The Court has inspected the letter in camera to determine the extent to which the letter's text can be produced. The Court will require Mr. Stein to advise the Receiver of the identity of the recipient of the letter to confirm whether that lawyer represents the same individual whom the Stein Law Firm represents. As for the document's contents, the Court concludes that parts of it are protected by the attorney-client privilege because they involve the provision of legal services to the Stein Law Firm's client, but that other portions must be disclosed to the Receiver because they do not involve legal services and the Stein Law Firm has not shown that the information comes within an exception to the general rule mandating disclosure of this information. The Court has attached to this Memorandum Opinion and Order a redacted version of the letter, as Exhibit A, ex parte and under seal, that will demonstrate how Mr. Stein must redact the material protected by the attorney-client privilege.  Mr. Stein must turn over to the Receiver the remaining parts of the letter.

8.    **Category No. 12: Letter to Client.**

Mr. Stein asserted that this letter from him to the unnamed client was a "confirmation of conversations as to services he was retained for." Id. ¶ 13, at 3. In any event, for the reasons that the Court has already stated, Mr. Stein must disclose the identity of this letter's recipient, even if it is his client. The Court has inspected the letter in camera to determine the extent to which the letter's text can be produced. As for the document's contents, the Court concludes that parts of it are protected by the attorney-client privilege because they involve the provision of legal services to the Stein Law Firm's client, but that other portions must be disclosed to the Receiver. The Court has attached to this Memorandum Opinion and Order a redacted version of the letter, as Exhibit B, ex parte and under seal, that will demonstrate how Mr. Stein must redact the material protected by the attorney-client privilege. Mr. Stein must turn over to the Receiver the remaining parts of the letter.

The portions of the letter that the Court is ordering Mr. Stein to turn over to the Receiver do not involve legal services. Instead, the unredacted parts of the letter concern the identity of the Stein Law Firm's client and the use of the Stein Law Firm as a conduit for the payment of money. As such, this information is not protected by the attorney-client privilege. See In re Grand Jury Subpoenas, 803 F.2d at 499.

Also, no exception to the attorney-client privilege applies to the unredacted information. Turning over the unredacted material would not be tantamount to disclosing an otherwise protected communication, because it discusses using the Stein Law Firm as a conduit for money without implicating any legal services provided to the client by the Stein Law Firm. There is not a strong probability that disclosing the unredacted portions of the letter will implicate the client in illegal activity, because it discusses the transfer of funds without hinting that those funds came from an

-25-

illegal source. Finally, the unredacted portions will not constitute the last link in an existing chain of incriminating evidence likely to lead to the client's indictment because a prosecutor or litigant would still have to show that any funds came from an illegal source.

9.    **Category No. 13: Trust Account Ledger Sheet.**

Mr. Stein stated that this document is an internal firm handwritten ledger that contains the client's name, as well as a list of all monies into and out of the Stein Law Firm's trust account related to the client. See id. ¶ 14, at 3. At the January 23 hearing, Mr. Stein stated that the reason that this document is protected is that it discloses the Stein Law Firm's client's name at the top of it. See Transcript of Hearing at 9:20-24 (taken January 23, 2006). Once again, the attorney-client privilege does not protect this information, and the Stein Law Firm's failure to produce this document contravenes applicable case law and the Court's prior ruling. Also, the Stein Law Firm has not shown that this document falls under any of the three exceptions to the general rule. Mr. Stein will turn this document over to the Receiver.

10.    **Category No. 14: Computer Records on Client with Computer Notes.**

Mr. Stein asserted that these documents reflect the opening of the file with the undisclosed client, as well as communications between the client and the Stein Law Firm and between Mr. Stein and his staff related solely to the opening of the file. See November 23 Caris Decl. ¶ 15, at 4. He acknowledged that the notes do not reflect any communications between attorney and client regarding legal advice or legal services. See id. At the January 23 hearing, Mr. Stein stated that the information contained therein was the same as contained in Category No. 1. See Transcript of Hearing at 9:25-10:2 (taken January 23, 2006). Therefore, for the same reasons that the Stein Law Firm must produce the New Client Information Form reflected in Category No. 1, the Stein Law

Firm must produce these records.

## II.   THE COURT WILL NOT ISSUE AN ORDER TO SHOW CAUSE WHY THE STEIN LAW FIRM SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO PRODUCE DOCUMENTS PURSUANT TO THE RECEIVER'S SUBPOENA AND THE COURT'S PRIOR ORDER.

The Receiver requests that the Court issue an order to show cause why the Court should not hold the Stein Law Firm in contempt under rule 45(e). See Motion to Compel at 8. The Receiver contends that the Stein Law Firm brought a frivolous motion for protective order without providing the Receiver the factual basis to withhold documents, without providing a privilege log identifying the items subject to the attorney-client privilege, and without providing the Receiver with the legal authorities upon which the Stein Law Firm asserted the attorney-client privilege. See id. Next, the Court held that the identity of Mr. Stein's client was not privileged information and required the Stein Law Firm to prepare a privilege log. Mr. Stein then prepared an incomplete privilege log and again withheld all documents that disclosed his client's identity or which might lead to the discovery of his client's identity.

Additionally, Mr. Stein acknowledged that much, if not all, of the communications did not relate to legal services, but rather had to do only with Mr. Stein acting as a conduit for the transfer of money to Mr. Lewis' criminal and civil lawyers. Finally, Mr. Stein belatedly withheld at least one document on the unsupported basis that it was protected from disclosure by the Internal Revenue Code. During the meet and confer process, Mr. Stein refused to back down, denied that the Court had already determined that the existence of the client was not privileged information, and continued to withhold any documents of substance.

The Receiver contends that the Stein Law Firm's and Mr. Stein's conduct has been

-27-

outrageous and contemptuous. See id. at 9. The Receiver argues that, pursuant to rule 45(e), it is appropriate for the Court to issue an order to show cause why the Court should not hold the Stein Law Firm in contempt of court for its failure to abide by the Court's prior order and, with the exception of the letters described in privilege log nos. 11 and 12, produce all of the documents sought. See id. The Receiver argues that, to purge this contemptuous conduct, the Stein Law Firm must produce all of the documents, provide documents nos. 11 and 12 to the Court for in camera inspection, disclose the identity of those letters' recipients, and reimburse the Receiver for all attorneys' fees and costs incurred in attempting to obtain these documents. See id. The Receiver represents that, at the time of the show cause hearing, he will present evidence demonstrating the full amount of attorney's fees and costs incurred in connection with this matter. See id.

The Receiver stresses that it is particularly important that his fees and costs be reimbursed, because his efforts in seeking to obtain these documents have depleted the limited resources of a receivership estate in which allegedly defrauded investors have lost over $156 million. See id. To date, the Receiver has been able to return only 3.2% of those losses to the defrauded investors, with such payment to be made in an upcoming distribution. See id. The Receiver contends that, if the Court does not require the Stein Law Firm to reimburse him as a result of its bad faith conduct in refusing to produce clearly discoverable documents, the receivership estate will suffer as a direct result of that conduct. See id.

The Court will not hold the Stein Law Firm or Mr. Stein in contempt. To prevail in a civil contempt proceeding, the party seeking contempt has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order. See Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d at 1315. The

Receiver's request for an order to show cause falters on the first element, the existence of a valid order. At the October 13 hearing, the Court stated that it would be inclined to deny the Stein Law Firm's Motion for a Protective Order and order that the disputed documents be turned over to the Receiver. See Transcript of Hearing at 3:11-19, 4:1, 5:4-9 (taken October 13, 2005). The Court did not expressly order the Stein Law Firm, at that time, to turn over the documents. While the Court had intended to issue a written order memorializing its ruling, the Court had not done so by the time that the Receiver filed his Motion to Compel. The Court did not issue that order until January 24, 2006, two months after the Receiver filed his Motion to Compel and after the events that the Receiver alleges form the basis of his request for an order to show cause had occurred. Although the Clerk's Minutes reflect the essential contours of the Court's January 24, 2006 order, see Clerk's Minutes at 1, the Clerk's Minutes itself is not an order of the Court. Because the Court had not yet issued its order requiring the Stein Law Firm to turn over the documents, the Court will not require the Stein Law Firm to show cause why it should not be held in contempt.

Nonetheless, the Stein Law Firm did not do all it could have done to bring this matter to a prompt resolution. In its original response to the subpoena, the Stein Law Firm did not provide all that it should have, such as the privilege log required in response to discovery that would set forth a prima facie case that the attorney-client privilege protects responsive documents in the Stein Law Firm's possession. The Motion for Protective Order did not provide supporting documentation sufficient to enable the Receiver to contest the privilege claim and, as a result, was deficient. The Motion for Protective Order did not comply with rule 45(d)(2) because it did not contain any documents or information that would allow the Receiver to contest the privilege claim. The Stein Law Firm did not include a log in the motion, with the motion, or in any prior communications to

-29-

the Receiver's counsel.

The Motion for Protective Order that it served on the Receiver did not contain citation to authority, except for one case cited in passing, that supported its assertion that the attorney-client privilege protected the documents the Receiver sought. *See generally* Motion for Protective Order at 1-2. *The two-page, mostly unsupported motion that the Stein Law Firm served on the Receiver provided no evidence or legal analysis to which the Receiver could respond in opposing the motion.* *See id.* The Receiver's ability to respond to the Motion for Protective Order and address the assertion of attorney-client privilege was impeded by the Motion's failure to: (i) identify the person the Stein Law Firm contends is a client; (ii) provide any description whatsoever of the basis of the attorney-client privilege claim; and (iii) explain why the blanket assertion of privilege would apply to every document that may exist and come within the subpoena's scope, including copies of the wire transfer receipts or other documents showing the payments made to Mr. Schlegel and Mr. Warner, which have already been revealed pursuant to the district court's order in the SEC action. The Stein Law Firm did not provide the Receiver with a fair opportunity to assess the substantive information that the Stein Law Firm presented to the Court, under seal, that the Stein Law Firm offered to support its refusal to turn over any records in response to the subpoena.

Moreover, the Court denied the Motion for Protective Order on the merits. *See* Transcript of Hearing at 3:11-19, 4:1, 5:4-9 (taken October 13, 2005). The case law establishes that the attorney-client privilege does not apply to protect information regarding: (i) the identity of a client; (ii) the amount or timing of payment of fees; and (iii) the source of funds for payment of fees. *See* In re Grand Jury Subpoenas, 906 F.2d at 1488, 1492; In re Grand Jury Proceedings, 33 F.3d at 1063-64; Vingelli v. United States, 992 F.2d at 453; Clarke v. American Commerce Nat'l Bank, 974 F.2d

at 129; <u>Tornay v. United States</u>, 840 F.2d at 1428-29. Whether the Stein Law Firm is the counsel for Mr. Lewis or for a third party, the court in the SEC action has ruled, consistent with the case authority, that this information is not privileged and must be disclosed to the Receiver.

There was nothing unclear about the Court's rulings at the October 13, 2005 hearing. The Court of Appeals cases that the Receiver cited established that the attorney-client privilege does not protect the documents that the Receiver sought in the subpoenas. The refusal to produce these documents to the Receiver interferes with the Receiver's exercise of his powers and duties under the Permanent Receivership Order and may violate the duties imposed on Lewis and his attorneys to cooperate with the Receiver in the Receiver's exercise of his powers and duties. If the Stein Law Firm is acting as counsel for Lewis, that firm is under a duty not to conceal Lewis' assets and must provide the requested documents under the Permanent Receivership Order, even if doing so may implicate Lewis or the Stein Law Firm in a violation of the Permanent Receivership Order or as a criminal act. The Court ruled that the identity of the Stein Law Firm's client was not privileged, but that some documents might contain confidential attorney-client communications. <u>See</u> Transcript of Hearing at 3:4-4:2 (taken October 13, 2005). The point of the privilege log was not for the Stein Law Firm to thereafter withhold all documents in contravention of the Court's ruling that the identity of the Stein Law Firm's client was not privileged. The point of the privilege log was for the Stein Law Firm to withhold documents that might be "intertwined" with confidential communications with its client. The Stein Law Firm did not, in its subsequent actions, take into account the Court's oral rulings and instead withheld everything, finally relenting to produce only those documents that did not disclose its client's identity. Mr. Stein's conduct was not reasonable in light of the Court's oral rulings and the applicable authorities. While it was proper to submit document nos. 11 and 12 to the

Court for in camera inspection, Mr. Stein made no effort to do so before the Receiver filed this motion or before the hearing on this motion. There was no sound justification for withholding the other documents that do not contain confidential attorney-client communications. Mr. Stein should have at least disclosed the identity of the recipients of those two letters on his privilege log.

The Stein Law Firm cannot continue reasonably to make a blanket claim of attorney-client privilege on the unfounded basis that the documents disclose its client's identity. The Receiver has repeatedly submitted case law demonstrating that the attorney-client privilege does not preclude production of documents which disclose the identity of the client, particularly where the relationship is for the purpose of using the lawyer as a conduit for the payment of money. The Stein Law Firm's continued insistence that it cannot produce documents "without the permission of the client" has no justification in law.

**IT IS ORDERED** that the Plaintiff's Request for Judicial Notice in Support of Motion to Compel Production of Documents Against the Stein Law Firm and Request for Order to Show Cause Why the Stein Law Firm Should not be Held in Contempt is granted and the Plaintiff's Motion to Compel Production of Documents Against the Stein Law Firm and Request for Order to Show Cause Why the Stein Law Firm Should not be Held in Contempt is granted in part and denied in part. The Stein Law Firm shall comply with the subpoena and will produce all documents set forth in the Stein Law Firm's privilege log in full, except as to document nos. 11 and 12. which will be produced subject to the redactions the Court has outlined in Exhibits A and B, respectively, to this Memorandum Opinion and Order, which are being filed ex parte to allow only Mr. Stein's review. The Stein Law Firm shall disclose the identity of the recipients of document nos. 11 and 12. The Stein Law Firm shall produce these documents within five days of the entry of this Memorandum

Opinion and Order. The Court will not issue an order to show cause why it should not hold the Stein

Law Firm be held in contempt.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Stuart L. Stein
Stuart L. Stein, PA
Albuquerque, New Mexico

    *Attorney for the Petitioner*

Gary Owen Caris
Lesley Anne Hawes
Frandzel Robins Bloom & Csato, L.C.,
Los Angeles, California

– and –

Karla K. Poe
Rodey, Dickason, Sloan, Akin & Robb,
Albuquerque, New Mexico

    *Attorneys for the Respondent*

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**